# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:19-cv-00579-RJC
# (3:15-cr-00121-DSC-22)

| | |
|---|---|
| LUIS ORDONEZ-VEGA, | ) |
| Petitioner, | ) ) ) |
| vs. | ) ORDER |
| UNITED STATES OF AMERICA, | ) ) ) |
| Respondent. | ) ) |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [CV Doc. 1];[1] the Government's Motion for Extension of Time [CV Doc. 4]; and Petitioner's motions [CV Docs. 5, 6].

## I. BACKGROUND

Petitioner Luis Ordonez-Vega ("Petitioner") is a member of a street gang La Mara Salvatrucha, or MS-13. United States v. Zelaya, 908 F.3d 920, 924 (4th Cir. 2018). MS-13, formed in the 1980s by Salvadoran immigrants to Los Angeles for protection against rival street gangs, "has grown into a violent organization with active 'cliques,' or local chapters with varying levels of autonomy, operating throughout the United States and several Central American countries." Id. at 924. "MS-13 cliques may extort local businesses or drug dealers, participate in international narcotics trafficking, and remit funds to gang leadership in El Salvador." Id.

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 3:19-cv-00146-RJC, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 3:15-cr-00265-RJC-DCK-1.

Petitioner was an MS-13 member when he moved from New York to Charlotte, North Carolina. Police in New York had encountered Petitioner in connection with their anti-gang efforts and had noted a "Mara Salvatrucha" tattoo across his chest. Id. Petitioner participated as a member of an MS-13 clique in and around Charlotte. Id.

On June 6, 2014, Petitioner and several other MS-13 members, including Christian Pena, were gathered in a parking lot outside of a strip mall. There they noticed Noel Navarro-Hernandez riding his bicycle in circles around a parked car that belonged to an MS-13 member. Id. Navarro-Hernandez went inside the mall. Believing Navarro-Hernandez to likely be a rival, MS-13 members plotted to rob him. Id. Petitioner and Pena executed the plan. When Navarro-Hernandez left the mall, Pena directed him to go behind the building where Petitioner was waiting. When Pena and Navarro-Hernandez arrived behind the mall, Petitioner shot Navarro-Hernandez to death. Id.

A grand jury indicted Petitioner and three dozen other MS-13 members. [CR Doc. 3: Bill of Indictment]. Petitioner was charged with one count of RICO (Racketeer Influenced Corrupt Organization) conspiracy in violation of 18 U.S.C. § 1962(d) (Count One); one count of murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1) and (2) for Navarro-Hernandez's murder (violent crime in aid of racketeering (VICAR)) (Count Four); and one count of using, brandishing, and discharging of a firearm during and in relation to a crime of violence, that is, the murder in aid of racketeering charged in Count Four, in violation of 18 U.S.C. § 924(c), (j)(1) (Count Five). [Id. at 35-36]. Count Four charged specifically as follows:

> 30. On or about June 6, 2014, in Mecklenburg County, within the Western District of North Carolina and elsewhere, the defendants, [Petitioner and Christian Pena] aided and abetted by each other and by others known and unknown to the Grand Jury, for the purpose of maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, **unlawfully and**

2

> **knowingly murdered Noel Navarro Hernandez, in violation of N.C. Gen. Stat. § 14-17**.
>
> All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

[Id. at 35 (emphasis added)]. Count Five alleged, in pertinent part, as follows:

> 32. On or about June 6, 2014, in Mecklenburg County, within the Western District of North Carolina and elsewhere, the defendants [Petitioner and Christian Pena] aided and abetted by each other and by others known and unknown to the Grand Jury, during and in relation to a crime of violence, **that being Murder in Aid of Racketeering, a violation of Title 18, United States Code, Section 1959, which is set forth in Count Four of this Indictment**, for which they may be prosecuted in a court of the United States, did knowingly and unlawfully use and carry a firearm, and, in furtherance of such crime of violence, did possess said firearm.
>
> It is further alleged that said firearm was brandished in violation of Title 18, United States Code, Section 924(c)(1)(A)(ii).
>
> It is further alleged that said firearm was discharged in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii).
>
> It is further alleged that in the course of such use and possession, they did cause the death of Noel Navarro Hernandez, said killing being murder as defined in Title 18, United States Code, Section 1111(a).
>
> All in violation of Title 19, United States Code, Sections 924(c) and 924(j)(l).

[Id. at 3].

Petitioner was represented by Attorneys Jeremy Smith and Harvey Carpenter, IV. [CR Docs. 239, 414]. Together with only three of thirty-six co-defendants, Petitioner proceeded to a jury trial on these counts after pleading not guilty. Petitioner testified in his own defense, claiming he shot Navarro-Hernandez in self-defense. United States v. Zelaya, 908 F.3d 920, 925 (4th Cir. 2018). The jury convicted Petitioner on all counts. [CR Doc. 825: Jury Verdict]. At Petitioner's sentencing hearing, Attorney Carpenter advised the Court that after trial and during the course of

3

Case 3:15-cr-00121-RJC-DSC   Document 1236   Filed 12/07/20   Page 3 of 14

Petitioner's counsel meeting with Petitioner to review the PSR, Petitioner voiced that he was very unhappy with Mr. Carpenter's and Mr. Smith's representation of Petitioner at trial. [CR Doc. 1130 at 2: Sentencing Tr.]. Petitioner had expressed that he believed his attorneys were both ineffective at trial, that they "had messed up his case and done a poor job and that he planned to file a 2255 against [his attorneys]." [Id. at 2]. At that time, Petitioner requested that only Attorney Carpenter continue to represent him at sentencing. [Id. at 2-3]. Thereafter, Attorney Carpenter, without Attorney Smith's assistance, prepared the case for sentencing. [Id. at 3]. At sentencing, Petitioner waived his right to have both Attorneys Smith and Carpenter representing him. [Id. at 4-5]. Petitioner was sentenced to terms of imprisonment of life on Counts One and Four, to run concurrently, and a term of imprisonment of life on Count Five, to run consecutively to the terms imposed on Counts One and Four. [CR Doc. 1101 at 2: Judgment]. Judgment on Petitioner's conviction was entered on December 19, 2016. [Id.].

Petitioner appealed the Court's Judgment. [CR Doc. 1103]. On appeal, Petitioner challenged the denial of his motion for acquittal under Rule 29 of the Federal Rules of Criminal Procedure and the admission of certain evidence. Zelaya, 908 F.3d at 925. As to the Rule 29 motion, Petitioner argued there was insufficient evidence as a matter of law to support his VICAR conviction on Count Four, and, therefore, his § 924(c) conviction predicated on the VICAR offense on Count Five. Id. at 926. The Fourth Circuit found that there was sufficient evidence to support Petitioner's VICAR conviction and, because the acquittal Petitioner sought on the § 924(c) charge was based solely on insufficient evidence on the VICAR conviction, his challenge to his § 924(c) conviction also failed. Id. at 927.

As to the admission of evidence, Ordonez-Vega challenged the admission of testimony from two New York police officers who encountered Petitioner in New York in 2002 and 2004 in

4

Case 3:15-cr-00121-RJC-DSC   Document 1236   Filed 12/07/20   Page 4 of 14

connection with gang-related policing. The officers testified they saw Petitioner's gang tattoos and that he admitted that he was a member of MS-13. Petitioner argued this evidence was impermissible "bad acts" evidence that should have been excluded under Rule 404(b) of the Federal Rules of Evidence. Id. at 928. Reviewing the admission of evidence for abuse of discretion, the Court noted that Rule 404(b) does not apply to evidence introduced to prove a substantive element of the offense charged. Id. (citation omitted). Further, the evidence at issue was submitted for the narrow purpose of proving that Petitioner was a member of MS-13 as an element of the RICO and VICAR charges and, therefore, not subject to Rule 404(b) analysis. Id. Thus, the Fourth Circuit affirmed his conviction and sentence. Id. at 931. The Supreme Court denied Petitioner's pro se petition for writ of certiorari. Ordonez-Vega v. United States, 140 S. Ct. 314 (2019).

On October 28, 2019, Petitioner filed the instant § 2255 motion, asserting ineffective assistance of appellate counsel. [CV Doc. 1]. Petitioner claims he received ineffective assistance on appeal because a "conflict of interest" arose where appellate counsel failed to raise Petitioner's "non-frivolous" claim of ineffective assistance of trial counsel and thereby "waived" Petitioner's ability to raise this claim in a motion under § 2255. [Id. at 4]. For relief, Petitioner moves the Court to provide "exculpatory/Brady" evidence to a grand jury that Petitioner claims was previously withheld, and which will show Petitioner's innocence, and grant Petitioner a new trial. [Id. at 14]. In the alternative, Petitioner moves the Court to issue an Order recalling the Fourth Circuit's mandate on Petitioner's appeal, to appoint appellate counsel, and to allow Petitioner to proceed in raising a claim of ineffectiveness of trial counsel. [Id.].

On initial review, the Court ordered the Government to respond to Petitioner's motion. [CV Doc. 2]. On January 19, 2020, the Government filed its response six days late due to an

5

internal docketing error and moved for leave to file its response out of time [CV Doc. 4], which the Court will grant. On February 4, 2020, Petitioner moved to "supplement" his § 2255 motion to assert, for the first time, a claim that his § 924(c) conviction should be vacated under United States v. Davis, 139 S. Ct. 2319 (2019). [CV Doc. 5]. Then, on November 6, 2020, Petitioner moved for leave to amend his "memorandum of laws and facts." [CV Doc. 6]

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

### A. Ineffective Assistance of Counsel

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief

6

Case 3:15-cr-00121-RJC-DSC   Document 1236   Filed 12/07/20   Page 6 of 14

under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

Courts should ordinarily find ineffective assistance of counsel for failure to raise claims on appeal only when "ignored issues are clearly stronger than those presented." Smith v. Robbins, 528 U.S. 259, 288 (2000) (internal citation and quotation omitted). Appellate counsel is not required to assert all non-frivolous issues on appeal. Griffin v. Aiken, 775 F.2d 1226, 1235 (4th Cir. 1985). Rather, "it is the hallmark of effective appellate advocacy" to winnow out weaker arguments and to focus on more promising issues. Smith v. Murray, 477 U.S. 527, 536 (1986). Thus, "[a] decision with respect to an appeal is entitled to the same presumption that protects sound trial strategy." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993). Additionally, the petitioner still bears the burden of showing that there is a reasonable probability that but for counsel's failure to raise an issue on appeal, the result of the proceeding would have been different; i.e., that he would have prevailed on appeal. See Robbins, 528 U.S. at 285-86.

Petitioner claims that his appellate attorney provided ineffective assistance because he did not argue on appeal that trial counsel provided ineffective assistance. Petitioner also claims that this failure violated Anders v. California, 386 U.S. 738 (1967), and "waived" Petitioner's right to challenge trial counsel's alleged ineffectiveness in a § 2255 proceeding. [CV Doc. 1 at 4-6]. Petitioner suggests that appellate counsel exhibited a conflict of interest by failing to raise

7

ineffectiveness of trial counsel on appeal, which Petitioner contends was his strongest argument. [Id. at 6, 19]. Plaintiff's claims are not well taken.

"Ineffective assistance claims are not cognizable on direct appeal unless counsel's ineffectiveness conclusively appears on the record." United States v. James, 337 F.3d 387, 391 (4th Cir. 2003). "[I]t is well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'" United States v. King, 119 F.3d 290, 295 (4th Cir. 1997) (quoting United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992)); United States v. Defusco, 949 F.2d 114, 120 (4th Cir. 1991) (holding ineffective assistance claim was "improperly raised on direct appeal"). This construct allows an opportunity for defense counsel to respond to the allegations and for the court to develop the record. See United States v. Percy. 765 F.2d 1199, 1205 (4th Cir. 1985).

Here, Petitioner contends that his appellate counsel should have argued that trial counsel was ineffective for failing to: (1) object to the Government playing only "cropped parts of the shooting video" for the grand jury and at trial; (2) raise the stand your ground law as a defense; (3) file a motion for a bill of particulars; (4) provide evidence of Petitioner's work history; (5) hire a private investigator; (6) obtain telephone records to show Pena spoke with Christian Bergamasco, the leader of Pena's local MS-13 "clique," after the shooting; and (7) file an interlocutory appeal challenging this Court's denial of the motion to sever. [CV Doc. 1-1 at 21-28; see CR Doc. 1042 at ¶ 61: Presentence Investigation Report (PSR)].

Petitioner's appellate counsel's failure to raise on direct appeal an ineffective assistance of trial counsel claim based on these issues was not ineffective assistance. The record as to Petitioner's allegations of ineffective assistance of his trial counsel was not adequately developed

8

and this claim, therefore, was not cognizable on direct appeal. Attorney Carpenter's statement at sentencing that Petitioner believed he had received ineffective assistance during the trial is, contrary to Petitioner's contention, insufficient to render the issue adequately developed. [See CV Doc. 1-1 at 17-18]. As such, appellate counsel's decision not to raise these issues on appeal, including his advice to Petitioner that he could not raise these issues on appeal, was within the wide range of reasonable professional assistance. See Strickland, 466 U.S. at 689. Furthermore, Petitioner has not shown that the ineffective assistance of counsel issues he contends his appellate counsel should have raised on appeal are "clearly stronger" than the two issues that were, in fact, presented on appeal. See Robbins, 528 U.S. at 288. Petitioner, therefore, has failed to demonstrate deficient performance by his appellate counsel.

Petitioner has not and cannot show prejudice. First, Petitioner's assertion that he could not seek collateral review under § 2255 based on ineffective assistance of trial counsel without having first raised the issues on direct appeal is simply wrong.[2] See King, 119 F.3d at 295. Second, Petitioner has not shown a reasonable probability that the Fourth Circuit would have found his claim of ineffective assistance of trial counsel cognizable on direct appeal, let alone that the Fourth Circuit would have decided Petitioner's claims in his favor. See Robbins, 528 U.S. at 285-86. Finally, the Court has reviewed Petitioner's arguments on his trial counsel's alleged ineffective assistance and finds them all to be without merit, in any event.

As such, because Petitioner has not shown deficient performance or prejudice, his claim of ineffective assistance of counsel on appeal will be denied. See Robbins, 518 U.S. at 285-86.

---

[2] The Court also notes that Plaintiff's contention that his appellate counsel had a conflict of interest is also without merit. Appellate counsel's advice regarding raising the issue of ineffective assistance on direct appeal, as noted, was supported in law. Further, appellate counsel did not represent Petitioner at trial and, other than Petitioner's bare assertion, there is no evidence that appellate counsel was operating under a conflict of interest.

9

### B. Petitioner's Motions

On February 4, 2020, Petitioner filed a motion to "supplement" his § 2255 motion, in which he seeks to assert additional grounds for relief. [CV Doc. 5]. Because Petitioner's motion is in substance a motion to amend and because it was filed within 21 days of the Government's response pursuant to Rule 15 of the Federal Rules of Civil Procedure, the Court will treat it as an amendment as a matter of course.[3] See Fed. R. Civ. P. 15(a)(1) ("A party may amend its pleading once as a matter of course … 21 days after service of a responsive pleading.").

In his amendment, Petitioner argues, for the first time, that he is entitled to relief under United States v. Davis, 139 S. Ct. 2319 (2019), because his RICO conspiracy offense and "VICAR conspiracy" offense no longer qualify as crimes of violence for purposes of his conviction under § 924(c).[4] [CV Doc. 5 at 6-11]. Section 924(c) criminalizes the use of a firearm in furtherance of a "crime of violence." Under § 924(c), a crime is one of violence if it either "has an element the use, attempted use, or threatened use of physical force against the person or property of another," (the "force clause") or "by its nature involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" (the "residual clause"). 18 U.S.C. § 924(c)(3)(B). In Davis, the Supreme Court specifically held the residual clause of § 924(c)'s definition of "crime of violence" is "unconstitutionally vague." 139 S. Ct. at 2336. As such, after Davis, a conviction under § 924(c) is valid only if the predicate crime of violence satisfies the force clause. Here, Petitioner's predicate crime of violence was the murder

---

[3] The Court, however, will grant this motion to amend for the sake of clarifying the docket in this matter.

[4] Contrary to Petitioner's assertions, Petitioner's predicate crime of violence under § 924(c) was murder in aid of racketeering, not RICO conspiracy or VICAR conspiracy, and the Court will address Petitioner's claim accordingly.

10

of Navarro-Hernandez in violation of N.C.G.S. § 14-17 in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1) and (2).

Section 14-17 defines first and second-degree murder in North Carolina. Subsection (a) defines first-degree murder as "[a] murder which shall be perpetrated by means of … lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate, and premeditated killing, or which shall be committed in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kidnapping, burglary, or other felony committed or attempted with the use of a deadly weapon shall be deemed to be murder in the first degree." N.C.G.S. § 14-17(a). Subsection (b) provides that, "[a] murder other than described in subsection (a) … shall be deemed second degree murder." N.S.G.S. § 14-17. Count Four of the Indictment does not specify whether the VICAR offense was based on first or second-degree murder under § 14-17. [See CR Doc. 3 at 35]. As such, to address Petitioner's claim for relief under § 924(c), the Court will give Petitioner the benefit of the assumption that his predicate crime of violence was based on second-degree murder.[5]

"North Carolina second-degree murder is 'the unlawful killing of a human being with malice but without premeditation and deliberation.'" United States v. Parrish, 767 Fed. App'x 440, 442 (4th Cir. 2019) (quoting State v. Thibodeaux, 352 N.C. 570, 532 S.E.2d 797, 806 (2000) (internal quotations omitted)). "[T]he element of malice in second-degree murder is provided by intentional conduct, [and] a defendant need only intend to commit the underlying act that results in death." Id. (quoting State v. Coble, 351 N.C. 448, 527 S.E.2d 45, 48 (2000)). "[U]nlawfully

---

[5] The Court notes that the result would be the same if Petitioner's predicate crime of violence were North Carolina first-degree murder. See United States v. Mathis, 932 F.3d 242, 265 (4th Cir. 2019) (holding that because "[a] conviction for first-degree murder under Virginia law requires the 'willful, deliberate, and premediated' killing of another," the crime of first-degree murder under Virginia law "qualifies categorically as a crime of violence under [§ 924(c)'s] force clause").

killing another human being requires the use of force capable of causing physical pain or injury to another person." In re Irby, 858 F.3d 231, 235 (4th Cir. 2017) (internal quotation marks omitted). "Force," as used in § 924(c)'s "force clause," means "a substantial degree of force" that is "capable of causing physical pain or injury to another person." United States v. Evans, 848 F.3d 242, 245 (4th Cir. 2017). Because North Carolina second-degree murder under § 14-17(b) requires the unlawful killing of a human being, the Court finds that it qualifies as a crime of violence under § 924(c). As such, Plaintiff is not entitled to relief from his § 924(c) conviction under Davis. The Court will, therefore, deny Petitioner's motion on these grounds.

In his amendment, Petitioner also purports to assert additional grounds of ineffective assistance of his appellate counsel related to appellate counsel's failure to raise certain issues or include certain evidence in the record on appeal. [CV Doc. 5 at 2-3]. First, Petitioner appears to claim that appellate counsel failed to include in the appellate record a translation of a phone call from Pena to Bergamasco "stating that someone tried to pull a gun out at [Petitioner], and that [Petitioner] acted in self[-]defense." [Id. at 2]. Second, Petitioner claims that AUSA Elizabeth Greene argued with Government witness Pena while he was on the stand at trial and that Pena "stated in open court you told me to lie so you can give me a lighter sentence."[6] [Id.]. Third, Petitioner claims that appellate counsel was ineffective for stating in Petitioner's appellate brief "that the hand gun that [Petitioner] possessed belonged to Mr Pena was false and was never stated in trial court proceeding's." [Id. at 3 (errors uncorrected)]. Finally, Petitioner contends his appellate counsel was ineffective for failing to raise the issue that "Officer Timmothy[ ] was brought in to testify against [Petitioner], and it was discovered that he (covered up crimes

---

[6] There was no such exchange between AUSA Greene and Pena at Petitioner's trial. [See Doc. 945 at 125-198].

12

committed by their witness Christian Bergamasco), including Mrs. Green that signed his release bond to be free committed a serious shooting a seven year old girl." [Id. (errors uncorrected)].

Petitioner, however, presents nothing to demonstrate the significance of these discreet, undeveloped assertions. They are nothing but vague and conclusory statements insufficient to establish a claim of ineffective assistance. See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding it was proper to dismiss § 2255 claims based on vague and conclusory allegations). Furthermore, Petitioner has again failed to show that these issues are "clearly stronger" than the two issues that were presented on appeal. See Robbins, 528 U.S. at 288. As such, Petitioner is not entitled to relief based on the claims asserted in the amendment to his § 2255 motion.

Finally, on November 6, 2020, nearly four years after his conviction and over a year after filing the instant motion to vacate, Petitioner moved for leave to amend his "memorandum of law and facts." [CV Doc. 6]. In this motion, Petitioner presents additional, though previously available, legal argument and makes further contentions as to the ineffectiveness of Attorney Carpenter, this time in relation to pre-plea stage representation. The Court will deny Plaintiff's motion to amend as untimely and futile, in any event. Nothing argued or alleged in this motion would change the outcome of these proceedings.

### IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 petition and disposes of the other pending motions as provided in this Order.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED** and **DISMISSED**.

2. The Government's Motion for Extension of Time [Doc. 4] is **GRANTED** and its Response [Doc. 3] is deemed timely filed.

3. Petitioner's motion [Doc. 5] is **GRANTED IN PART** in that the Court considered Petitioner's amendment in accordance with the terms of this Order and **DENIED IN PART** as to all relief sought therein.

4. Petitioner's motion [Doc. 6] is **DENIED** in accordance with the terms of this Order.

5. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: December 7, 2020

Robert J. Conrad, Jr.
United States District Judge